## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN LADAS, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>AMERICAN SIGNATURE, INC., d.b.a. Value-City Furniture,<br><br>       Defendant. | CASE NO. 3:20-CV-458 |

### CLASS ACTION COMPLAINT

NOW COMES Plaintiff John Ladas, on behalf of himself and all others similarly situated, and for his Class Action Complaint pursuant to Rule 23 of the Federal Rules of the Civil Procedure, alleges as follows:

### NATURE OF ACTION

1.    Several models of Defendant American Signature's ("AS") mattresses containing dangerous glass fibers a.k.a. fiberglass (the "Affected Mattress(es)") suffer from potentially catastrophic design defects and inadequate warning labels that can result in large amounts of glass fibers releasing from the mattresses into the surrounding environment potentially causing serious injuries and extensive property damage. One vulnerable point for glass fibers to exit from the Affected Mattresses is when the removable outer cover ("Outer Cover") of the mattress is unzipped. Once the outer cover is removed, AS's defective design (the "Defects") exposes the inner cover which contains a large percentage of glass fibers. Other Defects include the Affected Mattresses potentially releasing glass fibers into the environment if the Affected Mattresses sustains a small tear from normal use.

2.      On February 14, 2020, a television news story entitled "Hidden Hazards" aired on KMOV4 in St. Louis, Missouri (the "Report") documenting "the danger lurking in your mattress."[1] This featured news story outlines the tragic events a family experienced when their child's As-branded mattress released extremely large amounts of dangerous glass fibers which then caused serious and potentially life-threatening injuries to their family of five and "destroy[ed] thousands of dollars of stuff and [their] whole life."[2] The story also reports, like the local family, "[a] family in the Phoenix area had to move out of their home, throwing almost everything out. Videos on YouTube show others complaining as well."[3] Like the As-branded mattresses, the Affected Mattresses here suffer from similar catastrophic defects.

3.      Upon information and belief, AS has sold thousands of Affected Mattress throughout the United States. Plaintiff John Ladas ("Plaintiff") therefore brings this action on behalf of the following classes: (1) a proposed nationwide class of consumers who purchased the Affected Mattresses;  (2) a proposed nationwide class of individuals injured by glass fibers from the Affected Mattresses; (3) proposed nationwide class of individuals who suffered personal property damage by glass fibers from the Affected Mattresses; and (4) a proposed nationwide class of individuals who suffered real estate property damage by glass fibers from the Affected Mattresses.

**PARTIES**

4.      Plaintiff John Ladas is an adult citizen and resident of Belleville, Illinois.

---

[1] Lauren Trager, *News 4 Investigates: The danger lurking in your mattress,* https://www.kmov.com/news/news-investigates-the-danger-lurking-in-your-mattress/article_2bb77cc2-4eb7-11ea-b4c6-0319ba20d45f.html (last visited on May 15, 2020. ("The Report").
[2] *Id.*
[3] *Id.*

5.    AS, d.b.a. Value-City Furniture ("VCF"), is a Delaware corporation with its principal place of business in Columbus, Ohio. AS is in the business of selling mattress subject to this Complaint. AS does business nationwide.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs. Members of the proposed Classes are citizens of States different from Defendant; and Defendant is not a citizen of the State of Illinois. This Court also has jurisdiction to decide claims brought under 15 U.S.C. § 2301 (the Magnuson-Moss Act) by virtue of 28 U.S.C. § 1332(a)-(d), 28 U.S.C. § 1331, and has supplemental jurisdiction over the remaining claims.

7.    This Court has personal jurisdiction over AS because it is registered to conduct business in Illinois and has sufficient minimum contacts in Illinois, or otherwise intentionally avails itself of the markets within Illinois through the promotion, sale, marketing and distribution of its mattresses, to render the exercise of jurisdiction by this Court proper.

8.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### I.    AS Mattresses Containing Glass Fibers

9.    This lawsuit concerns AS Mattresses containing fiber glass a.k.a. glass fibers.

10.    On information and belief, the glass fibers contained within the Affected Mattresses are for fire retardant purposes and are larger in diameter than the type of fiberglass used in household insulation.

11.     Pursuant to 16 CFR 1632.31, AS must ensure all of its "mattress pads which contain a chemical fire retardant shall be labeled with precautionary instructions to protect pads from agents or treatments which are known to cause deterioration of their flame resistance. Such labels shall be permanent, prominent, conspicuous, and legible." 16 C.F.R. § 1632.31.

12.     Some of the Affected Mattresses contain a removable outer cover which may be removed by a zipper[4]. Each day in America, millions of individuals use zippers to open pants, jackets, coats, shoes, backpacks, luggage, mattress covers, etc. Given how widely people in our society use zippers, attaching one to an object invites opening that object.

13.     Once the removable outer cover is opened and removed from the mattress, a small tear in the inner cover may release thousands of glass fibers into the surrounding environment.

14.     Even with mattresses without a removable Outer Cover, Glass fibers may release from an Affected Mattress from normal wear and tear.

15.     Once in the environment, these glass fibers easily disperse through the air, and can travel throughout a home via HVAC systems, vents, doorways, windows, etc. The glass fibers attach to essentially anything they touch. This includes human skin, animals, clothes, towels, bedding, carpet, tile flooring, drywall, electronics, bedding, wood, and plastic.

16.     Exposure to glass fibers may cause eye, skin, and upper respiratory tract irritation. Glass fibers that reach the lower part of a person's lungs increases the chances of adverse health effects. Glass fibers that become embedded in human skin may require surgical intervention for removal.

---

[4] ThoughtCo., The History of the Zipper, https://www.thoughtco.com/history-of-the-zipper-4066245 ("Today the zipper is everywhere and is used in clothing, luggage, leather goods and countless other objects." (last visited on March 7, 2020).

17.     The cost of cleaning a home exposed to glass fibers may cost thousands to possibly tens of thousands of dollars.[5] Experts may recommend occupants of a home exposed to glass fibers to vacate the home until it is professionally cleaned.[6]

## II.     Plaintiff's Experience with an AS Mattress

18.     In March 2018, Plaintiff purchased a Tranquil queen mattress containing glass fibers ("Purchased Mattress") from a VCF located in Fairview Heights, Illinois. The purchase was confirmed by a sales receipt. The Purchased Mattress contained a removable Outer Cover equipped with a zipper.

19.     In or around November 2019, Plaintiff removed the Outer Cover of the Purchased Mattress because the Outer Cover had developed a hole due to normal wear and tear.

20.     Plaintiff proceeded to sleep on the Purchased Mattress without the Outer Cover on it because it had a hole in it.

21.     Within weeks, Plaintiff began to experience extreme bouts of itchiness, respiratory issues, and sores all over his body. At first, Plaintiff could not determine the cause of his health issues. He thought the cause might be from fiberglass insulation in his home which prompted him to hire a professional to inspect it. The professional determined Plaintiff's household fiberglass was not leaking.

22.     Around December 20, 2019, Plaintiff discovered the cause of his skin irritation and respiratory issues were likely from glass fibers leaking from his Purchased Mattress.

23.     Plaintiff began noticing his home was blanketed with hard-to-see tiny shards of glass. The glass fibers were embedded throughout his home and personal property including, but

[5] The Report.
[6] *Id.*

not limited to, his clothes, bedding, towels, appliances, couches, flooring, electronics, and the inside of his car.

**III.    Injuries**

24.    The glass fibers from the Purchased Mattress caused Plaintiff extreme pain and suffering which includes dermatitis; sores in his mouth, throat, neck, and body; respiratory issues; vision problems; and sever headaches. Plaintiff's injuries caused him to go to a local emergency room where physicians indicated his injuries were likely the result of exposure to glass fibers.

**IV.    Property Damage**

25.    The glass fibers from the Purchased Mattress caused significant and potentially irreversible damage to Plaintiff's home and personal property. To date, Plaintiff is not living in his home because the glass fiber contamination has made it uninhabitable.

26.    Multiple professional restoration companies have given Plaintiff estimates ranging into the tens of thousands of dollars to remediate his home.

**V.    AS Knew or Should Have Known of the Defects for Several Years**

27.    As previously outlined, in recent years news outlets throughout the country have reported on mattresses comprised of glass fibers a.k.a. fiberglass releasing said glass fibers causing serious injuries and property damage. As the result of this publicity coupled with consumer complaints, it is reasonable to assume AS was on notice or should have been on notice of the Defects.

**DAMAGES**

28.    The Defects and AS's conduct to misrepresent and conceal them caused damage to Plaintiff and the Class in at least three ways, as alleged in detail below. First, members of the Class would not have purchased the Affected Mattresses at all, or would have paid less for them, had the

Defects been disclosed to them. Each of these injuries has already occurred. None of the injuries requires any Class members' mattress to release glass fibers. Second, members of the class personally injured by the glass fibers contained within the Affected Mattresses. And third, members of the class who suffered property damage caused by the glass fibers contained within the Affected Mattresses.

### CLASS ACTION ALLEGATIONS

29.     The Classes' claims all derive directly from a single course of conduct by AS. AS has engaged in uniform conduct toward the class members. It did not differentiate, in degree of care or candor, its actions or inactions, or in the content of its statements or omissions among individual Class members. The operative facts on these subjects are the same for all Class members. The same legal standards govern each Claim for Relief asserted by the respective Classes. Additionally, the state law claims (fraud, unjust enrichment, breach of implied warranty, strict liability, negligence, and gross negligence) share the same legal standards and elements of proof across states, thus facilitating the certification of a National Class.

30.     Accordingly, Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

I.    **The Nationwide Consumer Class**

31.     Plaintiff brings this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a **Nationwide Class** defined as follows:

All persons who purchased an Affected Mattress in the United States, which was manufactured and/or sold by AS and contained glass fibers.

## II.     The Nationwide Personal Injury Class

32.     Plaintiff brings this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a **Nationwide Class** defined as follows:

All invididuals in the United States injured by glass fibers from an Affected Mattress, which was manufactured and/or sold by AS and contained glass fibers.

## III.     The Nationwide Personal Property Damage Class

33.     Plaintiff brings this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a **Nationwide Class** defined as follows:

All persons in the United States who suffered personal property damage caused by glass fibers from an Affected Mattress, which was manufactured and/or sold by AS and contained glass fibers.

## IV.     The Nationwide Real Estate Property Damage Class

34.     Plaintiff brings this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of a **Nationwide Class** defined as follows:

All persons in the United States who suffered real estate property damage caused by glass fibers from an Affected Mattress, which was manufactured and/or sold by AS and contained glass fibers.

35.     The Nationwide Class and their members are sometimes referred to herein as the "Class" or "Classes."

36.     Excluded from the Classes are AS; any affiliate, parent, or subsidiary of AS;  any entity in which AS has a controlling interest; any officer, director, or employee of AS;   any

successor or assign of AS; counsel for Plaintiff or anyone employed by counsel for Plaintiff in this action and their immediate families; any Judge to whom this case is assigned and his or her immediate family and staff.

37.     This action has been brought and may properly be maintained on behalf of Classes proposed above under Federal Rule of Civil Procedure Rule 23.

38.     **Numerosity.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Upon information and belief, there are thousands of Affected Mattresses nationwide. Individual joinder of all Class members is impracticable.

39.     Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Defendant or third parties in the usual course of business and within their custody or control. Plaintiff anticipates providing appropriate notice to each certified Class in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or  pursuant to court order under Fed. R. Civ. P. 23(d).

40.     **Existence of common questions.** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2).  These common questions include:

a.     Whether the zipper on the outer cover constitutes a defect in Affected Mattresses.

b.     Whether the zipper on the outer cover constitutes a safety-related defect in Affected Mattresses.

c.     Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a defect in the mattress system.

    d.      Whether the Affected Mattresses' vulnerability to releasing glass fibers constitutes a safety-related defect in the mattress system.

    e.      Whether the Affected Mattresses' attached tags are inadequate to sufficiently warn the user of associated dangers.

    f.      Whether the Defects constitutes material facts that consumers might consider in making their purchasing decisions.

    g.      Whether Defendant fraudulently concealed these defects.

    h.      Whether Defendant fraudulently concealed other defects.

    i.      Whether Defendant misrepresented that the Affected Mattresses were safe.

    j.      Whether Defendant engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose the Defects.

    k.      Whether the Defendant violated consumer protection statutes, and if so, what remedies are available.

    l.      Whether the Affected Mattresses were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability.

    m.      The scope of any implied warranties applicable to the Affected Mattresses.

    n.      Whether Defendant violated the implied warranties applicable to the Affected Mattresses.

    o.      Whether Defendant be declared responsible for notifying all Class members of the Defects.

    p.      Whether Defendant is liable under various theories of state liability.

    q.      Whether Defendant is liable to the Class for damages and/or penalties as a result of its knowledge, conduct, action, or inaction; and.

r.   Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or preliminary and/ or permanent injunction.

41.   **Typicality.** Plaintiff's claims are typical of the claims of the Class, because, among other things, Plaintiff's Purchased Mattress contain the same Defects found in all other Affected Mattresses. As such, they meet the requirements of Fed. R. Civ. P. 23(a)(3).

42.   **Adequacy.** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent, and he is capable and willing to participate in this litigation. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel. As such, they meet the requirements of Fed. R. Civ. P. 23(a)(4).

43.   **Declaratory and Injunctive Relief.** Federal Rule of Civil Procedure 23(b)(2): Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

44.   **Predominance and Superiority.** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The common questions listed in paragraph 40, above, are the central legal and factual issues in the litigation. The injuries suffered by each Class member, while meaningful on an individual

basis, are not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Defects, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

45.     In the alternative, the Class may be certified because:

a.      The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant; and/or

b.      The prosecution of separate actions by individual Class members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

**CLAIMS FOR RELIEF**

**COUNT ONE**
**Violation of Magnuson-Moss Warranty Act**
**(15 U.S.C. § 2301, *et seq*.)**

46.     Plaintiff reallege and incorporate by reference all paragraphs as though fully set forth herein.

47.     The Class Plaintiff brings this Count against Defendant on behalf of members of the Nationwide Class.

48.     The Affected Mattresses are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

49.     Plaintiff and the Class members are the buyers of the Affected Mattresses. They are therefore "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

50.     Defendant is each a "supplier" and/or "warrantor" within the meaning of the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(4)-(5). Defendant is engaged in the business of making consumer products directly or indirectly available to consumers and is obligated under an implied warranty to the Plaintiff and Class members.

51.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a supplier or warrantor to comply with a written or implied warranty.

52.     Defendant owes the Plaintiff and other Class members an implied warranty of merchantability in connection with the purchase of its mattresses. As part of the implied warranty of merchantability, Defendant warrants that the Affected Mattresses are fit for their ordinary purpose as mattresses in safe condition and substantially free from defects.

53.     As described in more detail above Defendant breached those implied warranties and is therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Affected Mattresses share the Defects. These design defects make the Affected Mattresses unsafe by potentially exposing the user to dangerous class fibers.

54.     Any efforts by Defendant to limit the implied warranties in a manner that would exclude coverage of the Affected Mattresses is unconscionable, and any such effort to disclaim or otherwise limit liability for the Affected Mattresses is null and void.

55.     Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant, on one hand, and Plaintiff and the other Class members, on the other.

56.     Plaintiff and each the other Class members have had sufficient direct dealings with either Defendant or its agents to establish privity of contract.

57.     Plaintiff and each of the Class members are intended third-party beneficiaries of contracts between AS and any other mattress manufactures.

58.     Plaintiff and the Class members were not required to give notice to Defendant or to afford Defendant an opportunity to cure its breaches of the implied warranties. Defendant had actual knowledge, or should have known, or were reckless in not knowing, of the Defects, but Defendant nonetheless failed to correct the Defects prior to the filing of Plaintiff's Class Action Complaint, thus making formal pre-suit notice unnecessary and futile. Even if notice were deemed to be required, Plaintiff may proceed prior to affording Defendant a reasonable opportunity to cure its breaches because class Plaintiff would not be obligated to provide notice and opportunity to cure until the Court determines their representative capacity pursuant to Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 2310(e).

59.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.

60.     Plaintiff and the Class members seek all damages permitted by law, in an amount to be proven at trial.

61.     Plaintiff and the Class members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Defendant had actual knowledge, or should have known, or were reckless in not knowing, steps taken by Defendant were inadequate to render the Affected Mattresses safe and merchantable. Plaintiff thus requests payment of all fees and costs necessary to repair the Defects. Plaintiff and other Class members further request re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Defects.

62.     The right of the Plaintiff and other Class members to recover these expenses as an equitable manner, to put them in the place that they would have been but for Defendant's conduct, presents a common question of law. Equity and fairness require the establishment by Court decree and administration under Court supervision of a program funded by Defendant, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

63.     Further, based on the Defendant's continuing failures to fix the known dangerous Defects, Plaintiff and the other Class members seek as equitable relief under 15 U.S.C. § 2310(d)(1): (a) a declaration that Defendant have not remedied the Defects; and (b) injunctive relief in the form of judicial supervision of a process requiring Defendant to fully repair the Defects or to refund to Class members the purchase prices of its Affected Mattresses.

**COUNT TWO**
**Fraudulent Concealment/Fraudulent Omission**

64.     Plaintiff re-alleges and incorporate by reference all paragraphs as though fully set forth herein.

65.     Plaintiff brings this claim on behalf of the Nationwide Class against Defendant under the common law of fraudulent concealment and/or fraudulent omission, as there are no

material conflicts among various states' causes of action for fraudulent concealment or fraudulent omission as they apply to this case.

66. Defendant knew, or should have known, of the Defects since at least the summer of 2019.

67. Defendant concealed, suppressed, and failed to disclose material facts related to the Defects in public statements and communications which were designed and intended by Defendant to reach Plaintiff and the Class members. As described in Paragraph 27, AS knew or should have known of the Defects, but failed to reasonably notify consumers of the existence of the Defects, or their nature, extent, or severity.

68. At the time that Defendant concealed and suppressed these material facts, Defendant knew of these material facts and/or upon reasonable inquiry, Defendant would have come to know of these material facts.

69. Defendant made these material omissions with the intention of reaching Plaintiff and the Class members and influencing Plaintiff's and the Class members' actions and with the intent that Plaintiff and Class members rely on Defendant's deception.

70. These omissions involved facts that were material because: (1) they are facts that would be relied on by a reasonable person purchasing or retaining a mattress; (2) they concern the type of information on which consumers would be expected to rely and would likely consider to be important in making a decision to purchase a mattress; and (3) they are of the type that a seller and/or manufacturer knows would be likely to induce a reasonable consumer to act, respond, or substantially change his or her behavior.

71. These facts are also material because they directly impact the value of the Affected Mattresses that were purchased by Plaintiff and the Class members. Whether a manufacturer's

products are safe and reliable, whether those products contain defects, and whether that manufacturer stands behind its products are material concerns to a consumer. Plaintiff and Class members trusted Defendant not to sell them mattresses that were defective or that violated federal law governing safety.

72.     Defendant concealed and suppressed these material facts to falsely assure purchasers and consumers that its Affected Mattresses were safe, as represented by Defendant and reasonably expected by consumers.

73.     Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and to avoid recalls that would hurt its brands' images and cost Defendant money. It did so at the expense of Plaintiff and the Class members.

74.     Plaintiff and the Class were unaware of these omitted material facts. Had they been aware of the Defects in the Affected Mattresses, and the Defendant's disregard for safety, they would not have purchased, would not have paid as much, or would not have retained their Affected Mattresses for as long a period of time. Plaintiff did not receive the benefit of his bargain as a result of Defendant's fraudulent concealment.

75.     Plaintiff and the Class members relied on and were deceived by Defendant's material omissions in purchasing or retaining his Affected Mattress.

76.     Defendant had a duty to disclose the Defects because:

a.     Defendant had exclusive and/or far superior knowledge and access to the facts related to the Defects, and these facts were not: (1) known to Plaintiff and the Class members; (2) reasonably discoverable by Plaintiff and the Class members through ordinary or due diligence; and/or (3) within the fair and reasonable reach of Plaintiff and the Class members;

b.      Plaintiff and Class members trusted and placed confidence in Defendant to inform them of technical and safety issues related to the Affected Mattresses, including issues related to glass fibers;

c.      Defendant were in a position of influence and superiority over Plaintiff and the Class members because Defendant designed, manufactured, and/or sold the Affected Mattresses, and Defendant possessed technical expertise and information that Plaintiff and the Class members lacked; and,

d.      Defendant made incomplete representations about the safety and reliability of the Affected Mattresses, while purposefully withholding material facts from Plaintiff and the Class members that contradicted these representations.

77.     Because of the concealment and/or suppression of the facts, Plaintiff and the Class members sustained damages. Accordingly, Defendant is liable to the Class for their damages in an amount to be proven at trial.

78.     Defendant's acts were done wantonly, willfully, maliciously, oppressively, deliberately, with intent to defraud, in reckless disregard of Plaintiff's and the Class's rights and well-being, and with the aim of enriching Defendant. Defendant's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT THREE**
**Unjust Enrichment**

79.     Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

80.    The Class Plaintiff brings this Count against Defendant on behalf of members of the Nationwide Class.

81.    Plaintiff and the Class members bring this claim to recover the amounts by which Defendant were unjustly enriched by virtue of its tortious or fraudulent conduct, and in the alternative to the Magnuson-Moss Warranty Act claim.

82.    Plaintiff brings this claim on behalf of the Nationwide Class against Defendant under the common law of unjust enrichment, as there are no material conflicts among various states' causes of action for unjust enrichment as they apply to this case.

83.    Plaintiff and the Class members conferred benefits on Defendant. Defendant received a benefit through its unjust conduct by selling the Affected Mattresses, which share the Defects. Plaintiff and the Class members overpaid for the Affected Mattresses, and the Affected Mattresses' values have diminished.

84.    It is inequitable for Defendant to retain these benefits.

85.    Plaintiff and the Nationwide Class members do not have an adequate remedy at law.

86.    As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount to be proven at trial.

**COUNT FOUR**
**Products Liability-Design Defect**

87.    Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

88.    The Class Plaintiff brings this Count against AS on behalf of members of the Nationwide Class.

89.     Upon information and belief, the Affected Mattresses are designed, manufactured, and sold by AS. At the time the Affected Mattresses were sold, AS was in the business of designing, manufacturing, and/or otherwise placing the Affected Mattresses in the stream of commerce.

90.     At the time the Affected Mattresses were designed, manufactured, and sold by AS, they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the Affected Mattresses were a direct and proximate cause of the injuries to Plaintiff.

91.     The Affected Mattresses reached Plaintiff in the condition expected and intended by AS.

92.     Plaintiff used the Affected Mattresses for its intended and foreseeable purpose.

93.     The Defects regarding the Affected Mattresses include but are not limited to the equipped zipper on the outer cover which invites users to open it which potentially exposes them to highly dangerous glass fibers.

94.     Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the utility of the Affected Mattresses.

95.     Plaintiff's ability to open the outer cover of his Purchased Mattress caused Plaintiff's injuries. Specifically, AS could have designed the Affected Mattresses without a zipper on the outer cover so as not to invite the user to open it.

96.     Each alternative design for the above identified defects was available in the market and was technologically and economically feasible at the time AS manufactured the Affected Mattresses and would not have impaired the utility of the Affected Mattresses.

97.     Further, at the time the Affected Mattresses were sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the Affected Mattresses were a producing cause of Plaintiff's injuries.

98.     At the time of the incident made the basis of this lawsuit, the Affected Mattresses were in the same or substantially similar condition as they were at the time they left AS's control and were placed into the stream of commerce. Any alterations to the Affected Mattresses were made by a dealer and/or agent of AS.

99.     To the extent AS attempts to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk or accident and/or injuries that occurred in this accident and/or AS withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

## COUNT FIVE
### Products Liability-Marketing Defect/Failure to Warn

100.     Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

101.     The Class Plaintiff brings this Count against AS on behalf of members of the Nationwide Class.

102.     AS failed to give adequate and proper warnings and instructions regarding the dangers of the Affected Mattresses which rendered the product defective and unreasonably dangerous and was a producing cause of Plaintiff's injuries and damages. Specifically, AS failed to warn potential and actual users of the dangers and risk of the defects. Further, Defendant failed to provide adequate instructions to users regarding proper use of the Affected Mattresses. AS's failure to warn was a proximate cause of Plaintiff's injuries and damages.

## COUNT SIX
**Strict Liability**

103.    Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

104.    The Class Plaintiff brings this Count against AS on behalf of members of the Nationwide Class.

105.    The Affected Mattresses that injured Plaintiff were originally designed, manufactured, and sold by AS. At the time the Affected Mattresses were sold, AS was in the business of designing, manufacturing, testing, assembling, monitoring, selling, and/or otherwise placing the Affected Mattresses, including the Affected Mattress at issue and its defective condition, which was the proximate cause of Plaintiff's injuries.

106.    The Affected Mattresses reached Plaintiff in the condition expected and intended by AS.

107.    Plaintiff used the Affected Mattresses for its intended and foreseeable purpose.

108.    Due to the design and manufacture of the Affected Mattresses, the Affected Mattresses were unreasonably dangerous. The failure to appropriately design and manufacture the Affected Mattresses was the direct and proximate cause of Plaintiff's injuries. Accordingly, Defendant should be held strictly liable.

109.    AS placed the Affected Mattresses into the stream of commerce and expected or could reasonably foresee the use of said Affected Mattresses by individuals, such as Plaintiff, in the condition in which the Affected Mattresses were designed, manufactured and sold.

110.    The Affected Mattresses were designed, manufactured and assembled so that the defective condition was undiscoverable at the time of use of the Affected Mattresses.

111.    The defective condition of the subject Affected Mattresses was not observable by Plaintiff who relied upon AS to design, test, manufacture, sell and deliver the subject Affected Mattresses in a condition fit for use for the purposes intended.

112.    As a direct and proximate result of the failure of AS to properly design, test, manufacture, sell and deliver the Affected Mattresses, Plaintiff has suffered severe personal injuries.

### COUNT SEVEN
### Negligence

113.    Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

114.    The Class Plaintiff brings this Count against AS on behalf of members of the Nationwide Class.

115.    Defendant committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiff's injuries.

116.    Defendant's acts or omissions constituting negligence include:

a.    Failing to properly design the Affected Mattresses;

b.    Failing to properly manufacture the Affected Mattresses;

c.    Failing to adequately test the Affected Mattresses;

d.    Failing to adequately market the Affected Mattresses;

e.    Failing to adequately instruct users in using the Affected Mattresses.

f.    Failing to recall the Affected Mattresses or, alternatively, to warn consumers of a known danger/defect in the Affected Mattresses;

g.    Failing to disclose post-sale information known about dangers or defects in the Affected Mattresses;

h.      Concealing known dangers associated with the Affected Mattresses; and,

i.      Failing to meet or exceed internal corporate guidelines.

### COUNT EIGHT
### Gross Negligence

117.    Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

118.    The Class Plaintiff brings this Count against AS on behalf of members of the Nationwide Class.

119.    Plaintiff makes a claim for punitive damages. Plaintiff seeks punitive damages for the gross negligence and/or malicious conduct of AS which was a proximate cause of the failure of Affected Mattresses and of Plaintiff's injuries and damages.

120.    Specifically, AS's conduct, when viewed objectively from AS's standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

121.    Furthermore, AS had actual, subjective awareness of the risk(s) but proceeded with a conscious indifference to the rights, safety or welfare of others.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes as defined herein, respectfully request that this Court enter a judgment against Defendant and in favor of Plaintiff and the Classes, and grant the following relief:

A.      Determine that this action may be maintained and certified as a class action on a nationwide, statewide, and/or multistate basis under Rule 23(b)(1), 23(b)(2) and/or 23(b)(3); or alternatively, certify all questions, issues and claims that are appropriately certified under 23(c)(4);

and that it designate and appoint Plaintiff as Class Representative, and appoint Class Counsel under Rule 23(g).

      B.     A declaration that the Affected Mattresses are defective as described herein.

      C.     A declaration that these defects are safety-related.

      D.     A declaration that the Defendant be financially responsible for notifying all Class members of the Defects present in the Affected Mattresses.

      E.     An order requiring Defendant to desist from further deceptive distribution and sales practices with respect to the Affected Mattresses.

      F.     Award Plaintiff and Class members their actual, compensatory, and/or statutory damages, according to proof;

      G.     Award Plaintiff and the Class members punitive and exemplary damages in an amount sufficient to punish Defendant for its misconduct and deter the repetition of such conduct by Defendant or others;

      H.     Award Plaintiff and Class members restitution and/or disgorgement of Defendant's ill-gotten gains for the conduct described in this Complaint;

      I.     Award Plaintiff and Class members their reasonable attorneys' fees, costs, and expenses;

      J.     Award Plaintiff and Class members pre-judgment and post-judgment interest;

      K.     Leave to amend this Amended Complaint to conform to the evidence produced at trial; and,

      L.     Award Plaintiff and Class members such other relief as the case may require; or as determined to be just, equitable, and proper by this Court.

      Dated: May 15, 2020                  Respectfully submitted,

*/s/ Christopher Cueto*
Christopher Cueto, IL #6192248
James E. Radcliffe, IL #6330315
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
ccueto@cuetolaw.com
jradcliffe@cuetolaw.com

Lloyd M. Cueto, IL #6292629
Law Office of Lloyd M. Cueto, P.C.
7110 West Main Street
Belleville, IL 62223
cuetolm@cuetolaw.com

Gregory A. Cade
Kevin B. McKie
ENVIRONMENTAL
LITIGATION GROUP, P.C.
2160 Highland Ave. S.
Birmingham, AL 35205
T: (205) 328-9200
F: (205) 328-9456
GregC@elglaw.com
kmckie@elglaw.com

**Attorneys for Plaintiff**